The Peoria Marine and Fire Insurance Company, Appellant, *v.* James C. Whitehill, Appellee.

### APPEAL FROM McLEAN.

Where there are several counts in a declaration, some of which are good, a general verdict will stand. By our practice the party should ask to have the jury disregard the faulty counts.

Where a party obtains leave to plead on terms, as that he shall plead to the merits, he is precluded from taking advantage of defects in the declaration.

Under an averment of a total loss, a party may recover for a partial loss, in an action of debt on an insurance policy.

Defects in a notice of loss under a policy of fire insurance, are waived if no objection is stated upon inquiry, or if other reasons are assigned for not paying the loss.

A few feet more or less, as to the distance of the residence of the notary or magistrate, who is required to certify in relation to the loss, will not be regarded.

Insurance companies have a right to limit, by their policies, the time within which an action shall be brought, under them; although there may be a waiver of such a condition by the conduct of the company.

This was an action of debt brought in the McLean Circuit Court. The declaration contains one count on a sealed policy of fire insurance, the common money counts and account stated. The cause was heard before Davis, Judge, and a jury.

The jury found for the plaintiff below. Debt, $1,056. Damages, one cent.

The facts of the case are stated in the opinion of the court.

N. H. Purple, and H. Grove, for Appellant.

W. W. Orme, for Appellee.

Breese, J. This was an action of debt on a policy of insurance against loss by fire, entered into March 29, 1859, for two

months then next ensuing. The declaration contains a special count on the policy setting out the condition, together with the common money counts and an account stated. The loss happened April 3, 1859, and the suit was commenced July 27, 1860. The plea was *nil debit*, with the following notice:

The plaintiff will take notice that upon the trial of this cause the defendant will prove and insist upon as his defense, that by the conditions of insurance referred to (No. xvii) in the said policy of insurance mentioned and set forth in the said plaintiff's declaration, and which conditions are annexed to and form a part of said policy of insurance, it is expressly provided that no suit or action against said company, for the recovery of any claim upon or under or by virtue of said policy, should be sustainable in any court of law or chancery, unless such suit or action should be commenced within 'the term of twelve months next after any loss or damage should occur, and in case any such suit or action should be commenced against said company after the expiration of twelve months next after such loss or damage shall occur, the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim thereby attempted to be enforced. And the defendant avers and will prove that said supposed damage and loss by fire in the plaintiff's declaration mentioned (if any there was), did occur more than twelve months next before the commencement of this suit. The defendant will also show and give in evidence, that said fire occurred through the fault and negligence of the plaintiff, his agents and servants; that the fire occurred through the wrongful acts of the plaintiff; that the plaintiff at the time of the fire was present and did not use all possible diligence in saving the property destroyed.

That after said loss occurred, the said plaintiff did not notify the secretary of the company, in writing, of said loss, as is provided for in condition No. xii of said policy of insurance aforesaid.

That the plaintiff has never, as required by condition No. xi of his said policy of insurance, made his proofs of loss. That the certificate of Jacob Spawe, the notary public, given to the plaintiff, and annexed to the affidavit of the plaintiff, and dated 11th of April, 1859, was obtained by the plaintiff by misrepresentation and fraud, and is untrue in fact. That a certificate was not obtained from the most contiguous magistrate, justice of the peace, or notary public, to the place of the fire.

Condition 17 is as follows:

17. It is furthermore hereby expressly provided, that no suit or action against said company, for the recovery of any claim upon, under or by virtue of this policy, shall be sustainable in

any court of law or chancery, unless such suit or action shall be commenced within the term of twelve months next after any loss or damage shall occur; and in case any suit or action shall be commenced against said company after the expiration of twelve months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim thereby so attempted to be enforced.

A trial was had, and a verdict for the plaintiff. A motion for a new trial was entered for the following reasons: 1, The court erred in admitting improper evidence on the part of the plaintiff; 2, In giving improper instructions for the plaintiff; and 3, Refusing to give instructions for the defendant. This motion being overruled, a motion in arrest of judgment was entered for the following reason: " The · plaintiff's declaration affirmatively shows that the plaintiff has no cause of action as to the first count, and as to the second count, no evidence was offered on the trial that could properly apply to the second count." This motion was also overruled. Judgment was entered on the verdict, and an appeal taken to this court, where several errors are assigned, some of which need not be noticed. The principal ones are on the instructions.

The points made by appellant under this assignment are : 1, That the declaration alleges the total destruction of the property, on the third of April, 1860, when the risk expired May 29, 1859. If this was a mere clerical error it would doubtless be cured by the verdict by force of our statute of amendments and jeofails. But there are other good counts in the declaration, and by section 25 of our Practice Act, ch. 83, (Scates' Comp. 261) it is provided, " Whenever an entire verdict shall be given on several counts, the same shall not be set aside, or reversed, if any one or more of the counts be good. But if one or more of the counts be faulty, the defendant may apply to the court to instruct the jury to disregard the faulty count." This remedy, the defendant might have pursued. Not having done so, he cannot now urge the objection. The statute is imperative, that the verdict shall stand. The rule is universal, where a verdict has been had on a declaration containing several counts, any one of which is good, the judgment shall not be arrested. But the appellant is precluded making this objection for the reason, there had been a default taken against him, at a previous term, which the court, on defendant's motion, set aside on terms— that the defendant should pay the costs and plead to the merits. This means that he shall take no advantage of any defect in the declaration. The defendant having accepted the terms imposed

by the court, ought to be bound by them. The merits are found by the verdict. He had interposed a demurrer to the declaration, but abandoned it and pleaded to the merits.

The objection that the allegations and proofs do not correspond—that the declaration alleges that the articles insured were consumed by the fire, when the proof shows they were damaged only. The averment is equivalent to an averment of a·total loss, and the proof is of a partial loss—not a destruction of the articles, but an injury to them caused by the fire.

The rule is well settled that under an averment of a total loss on a marine policy, the plaintiff may recover for a partial loss. In *Gardiner* v. *Crowdale*, 2 Burrow, 904, which was an action on the case, where the plaintiff declared upon a total loss of a ship, but proved only an average or partial loss, it was objected, that the jury could not take a partial loss into consideration upon an express declaration for a total loss, and cases were cited bearing on the point. Lord Mansfield said " he could not hear of any such determination as can support the objection made by the defendant's counsel. Therefore it stands singly upon principles ; and upon principles it is extremely clear, that the plaintiff may, upon this declaration, recover damages as for a partial loss. This is an action upon the case which is a liberal action, and a plaintiff may recover less than the grounds of his declaration support, though not more. This is agreeable with justice, and consistent with his demand. As to its being a total loss, or a partial loss, that is a question more applicable to the quantity of damages than to the ground of the action. The ground of the action is the same whether the loss be partial or total ; both are perils within the policy." He knew of no difference in principle between a marine and a fire policy, nor can the objection prevail in this case because it is an action of debt. In debt, a party may recover less than he declares for, and so in ejectment for a quarter section of land, the plaintiff may recover a half-quarter or less. This court decided in *Case* v. *The Hartford Fire Insurance Company*, 13 Ill. 676, that the plaintiff need not prove an actual destruction by fire, but can recover such damages as he may show was occasioned by the removal of the goods to get them out of the reach of the fire. The proof shows that the agent of the company was engaged with the plaintiff in ascertaining the damages and getting up proof of the losses by the fire, and that the articles insured were all damaged by the fire or smoke, and that the agent was satisfied with the appraisement.

Condition xi is as follows : All persons insured by this company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the company or its agent, and as soon

after as possible to deliver in a particular account of such loss or damage, signed with their own hands and verified by their oath or affirmation; they shall also declare on oath whether any, and what other insurance has been made on the same property; what was the whole value of the subject insured; what was their interest therein; in what general manner (as to trade, manufactory, merchandise or otherwise,) the building insured or containing the subject insured, and the several parts thereof, were occupied at the time of the loss, and who were the occupants of such building, and when and how the fire originated, so far as they know and believe; and procure a certificate, under the hand of a magistrate or notary public, (most contiguous to the place of fire, and not concerned in the loss as a creditor or otherwise, or related to the insured or sufferers,) that he is acquainted with the character and circumstances of the person or persons insured, and has made diligent inquiry into the facts set forth in their statement, and knows, or verily believes, that he, she or they, really, and by misfortune, and without fraud or evil practice, hath or have sustained by such fire, loss and damage to the amount therein mentioned.

No defects in the preliminary proofs required by this condition were alleged when presented to the secretary of the company. Charles Monell, a clerk in the defendant's office, stated that he was present when the plaintiff handed in his proofs to the secretary of the company, and heard the plaintiff ask the secretary if he should make out any further proofs of loss—the secretary replied, he could if he was a mind to, that he should not pay the loss—the secretary told the plaintiff that he had information from Lexington about the loss, and would not pay it, and said he thought the plaintiff had burnt the house himself. When plaintiff said he would like to have a hearing before the board of directors, the secretary replied he thought it would not amount to anything. The secretary adjusted losses—he had authority from the board to determine about the payment of losses.

Now if the preliminary proofs were defective, it was not so intimated or declared to the plaintiff when he presented them to the secretary, who had full power to adjust the loss. No objection was pointed out, but the refusal to adjust the loss was put distinctly on the ground that the plaintiff had himself burnt the building. The rule is well established, that if an insurance company put their refusal to pay on some other grounds than a defect in the preliminary proofs, and suggest no defects in such proofs, their silence will be held as a waiver of the defects, and the proofs must be considered as having been duly made according to the conditions of the policy. *O'Neil* v. *The Buffalo Fire Insurance Co.*, 3 Comstock, 122; *Great Western Insur-*

*ance Co.* v. *Staaden*, decided by this court;[*] *Ætna Insurance Co.* v. *Tyler*, 16 Wendell, 385. This doctrine prevails generally, in all the States. The point raised about the proximity of the notary, amounts to nothing, for Spawe, the notary, testified that his residence was nearer than that of any other notary or magistrate, though there was a magistrate's office across the street from the fire, and somewhat nearer the fire than his residence. The condition is fulfilled by proving the certificate of the nearest notary or magistrate, and courts will not be very particular on the point of propinquity—a few yards more or less will not be regarded. The contiguity is sufficiently proved. We think condition xi of the policy was substantially complied with, or if it was not, it was waived by the defendant.

As to the instructions, not much exception is taken to any by the appellant, except in giving the fourth and fifth on the part of the plaintiff, arising out of condition 17. They are as follows:

4. That the condition to the policy requiring suit to be brought within one year after the loss or damage occurs, is void, and is no bar to the plaintiff's action.

5. That if the jury believe, from the evidence, that the plaintiff and defendant were negotiating about the plaintiff's loss, and the defendant on its part by such negotiation, delayed plaintiff for a large part of the year following the loss; then, even if the conditions requiring suit to be brought within the year be valid under such circumstances, defendant cannot set up such conditions to defeat plaintiff's suit.

The appellant insists those instructions ought not to have been given; that parties have a right to limit the time within which actions may be brought on a policy of insurance. The fourth instruction is a proposition of law, which the court might give or refuse as it saw proper. What shall be a bar to an action, is, oftentimes, a very intricate question of law. The general rule is, as we understand it, that parties may insert such conditions as they please in a policy of insurance, provided there be nothing in them contrary to the criminal law, or public policy. This is constantly done in marine policies, and the principle which upholds it there, extends to all other policies. *Beadle* v. *The Chenango County Mutual Insurance Co.*, 3 Hill, 162.

We have been referred to two or three cases only, where this point has been made. The first case is *Kill* v. *Hollister*, 1 Wilson, 129, in the King's Bench, which was an action on a policy of insurance containing this clause. In case of any loss or dispute about the policy, it should be referred to arbitration,

---

[*] This case has not come to the hands of the Reporter.

and the plaintiff averred in the declaration that there had been no reference. Upon the trial at Guildhall, the point was reserved for the consideration of the court, whether the action well laid before a reference had been, and by the whole court, "If there had been a reference depending, or made and determined, it might have been a bar, but the agreement of the parties cannot oust this court; and as no reference has been, nor any is depending, the action is well brought, and the plaintiff must have judgment."

In *French et al.* v. *The Lafayette Insurance Company*, 5 McLean, 463, Justice McLean decided on the circuit, that a clause like condition 17, limiting the bringing an action within six months next after the loss or damage shall have occurred, was void as against public policy. He says, it is not a condition on which liability is to attach. It does not affect the contract but the remedy. A condition subsequent for the payment of money after the liability is fixed, by which the payment is barred, is a singular condition. It is nothing less than an act of limitation of six months. A statute of limitation is founded upon public policy. A contract is void if made against the policy of the law. But this limitation in the policy is not only opposed to the policy of the law, but in fixing a different time from the statute, is in conflict with it. Can parties in all contracts make a statute of limitation for themselves? This is an attempt to discharge or bar a right of action before the right occurs. He then asks, Why has a condition or an agreement in a policy, providing that all disputes arising under it shall be referred to arbitration, been held to be void? Because it is an attempt to oust the jurisdiction of the courts. This is the case in 1 Wilson, *ante*. This case has been followed in *Eagle Insurance Co.* v. *Lafayette Insurance Co.*, 9 Ind. 448, in which the reasoning of the judge is all against the decision of the court. The judge delivering the opinion says, it is a legal maxim that the agreement of the parties overrules the law. Broome's Legal Maxims, 539. But he says, this maxim is qualified by another, that the agreement of parties cannot render valid that which is against public policy, or in contravention of positive law. It is not easy to see that the stipulation in question is against public policy, or unjust, or in conflict with any positive requirement of law. On the contrary, it is for the interest of insurance companies and the public, that the exact condition, the precise extent of the liabilities of these companies, should be known. That such may be the case, it is necessary that losses covered by policies should be speedily adjusted and paid. Six months would seem to be long enough, a reasonable time, to enable the party sustaining loss, to ascertain and present it to

the company for payment, and to sue for it if not paid. A party may relinquish or waive a legal provision operating for his benefit when it is not against public policy to allow such a waiver; and in these cases it would seem to be done on a consideration.

We concur in this reasoning, and confess we cannot see with Justice McLean, that such a condition is against public policy or in conflict with the statute of limitations. It is a covenant upon good consideration, not to sue after one year. Nor can we see any very forcible reason for the doctrine as established in the case from 1 Wilson. It would seem any agreement should be tolerated which tends to relieve courts from the investigation of such questions, and that parties ought to be left free to choose their own tribunals. Arbitrations are as well known, and as fully recognized by the law as courts of judicature.

We do not feel bound to consider these decisions as of binding force upon us. Such an agreement is a part of the contract, and there is no general rule of law, or consideration of policy we are aware of, that should induce a court to refuse to give effect to a stipulation of this kind. The reasons given in 9th Indiana, if no others were adduced, would be quite satisfactory. This condition is so explicit that escape from its import by construction is not possible. It is not that an action shall be commenced within twelve months, but that no suit or action against the company shall be sustainable unless it is brought within twelve months, and if it is brought after that time, the lapse of time shall be taken as conclusive evidence against the validity of the claim. This latter clause is no more than where parties agree that a certain sum expressed in the contract shall be the measure of damages, any law to the contrary notwithstanding. The principle is the same.

Several cases have been referred to by the appellant, holding such a stipulation valid. They have been examined, and fully so decide. *Williams & Bliss* v. *The Vermont Mutual Fire Insurance Co.*, 20 Vt. 230; *Wilson* v. *Etna Insurance Co.*, 27 ib. 101. In *N. W. Ins. Co.* v. *The Phenix Oil and Candle Co.*, 31 Penn. 449, the court held such a contract binding, on the principle that parties are allowed to institute and define by contract, the most of the business relations arising among them; and that the substance of their contracts being lawful, the details and forms of them can be made to suit themselves. Where parties have agreed on the terms, and there be no ambiguity, the law has no function to perform. Such a contract is forbidden by no law, and is in conflict with none.

In the case of *Brown and Wife* v. *The Savannah Mutual Insurance Company*, 24 Georgia, 101, it was held, on such a clause, that no principle of public policy is violated by it. There is no reason why a party may not enter into a covenant that for an alleged breach of contract, the injured party shall sue within a period less than that fixed by the statute of limitations as a bar. To the same effect is *The Portage County Mutual Fire Insurance Company* v. *West*, 6 Ohio State Rep. 602.

In *Amesbury et al.* v. *Bowditch Mutual Fire Insurance Company*, 6 Gray, 606, all the cases are ably reviewed, and it was decided that such a condition was valid, contravening no law or principle of public policy. So also in *Nute* v. *Hamilton Mutual Insurance Company*, ib. 180, where the whole question is fully examined by Chief Justice Shaw.

As was said in the case of *Croy* v. *Hartford Fire Insurance Company*, 1 Blatchford C. C. 280, by Justice Nelson, we can say, we have been referred to no statute or principle of the common law, forbidding such a condition. We do not see why parties shall not make such contracts. In case of insurance companies there are strong reasons why they should introduce such a condition into their policies, on account of the frauds to which they are constantly exposed, and the difficulties attending its detection, and in procuring evidence to prove it in a court of justice; and the greater the lapse of time, the greater the difficulty would be. It is, therefore, a wise precaution, to limit, in the terms of their policies, the time within which actions shall be brought. It is but compelling by contract a speedy resort to the tribunals of the country, whilst the facts are fresh in the recollection of the parties and witnesses, and the proof accessible. No rule of law or principle of public policy is violated by it, and the Circuit Court should have affirmed its validity to the jury.

But it is insisted by the appellee, if the court erred in giving the fourth instruction, that does not necessarily reverse the judgment, inasmuch as the fifth fully embodies the law of the case, so that the jury could not have been misled.

He insists it was fairly left to the jury, by that instruction, to determine from the evidence whether the failure to bring the suit in one year after the loss was not the consequence of negotiations pending between the parties for an adjustment, and the delay necessarily to be attributed thereto. We cannot find, in the record, any evidence on this point. There are three letters from the insurance office to the plaintiff. The first, dated Oct. 7, 1859, in which the secretary writes in reply to plaintiff's letter of the 6th: " Our board did not take action on your case at

their last meeting. They had a prolonged session, being after ten o'clock at night, and much business was left over until our next regular meeting."

On November 10, 1859, the book-keeper of the company writes the plaintiff: "Yours of the 7th at hand. Secretary is absent; will hand him your letter on his return." On the 15th November the secretary writes the plaintiff: "In reply to yours of the 13th, I can only say, I have been absent for more than a month past; returned yesterday, and cannot say what has been done by the board during my absence. My clerks say, however, that we are garnisheed by St. Louis parties for and on your claim, and will have to answer that garnishee."

We cannot consider this as evidence of negotiations for an adjustment, especially when taken in connection with what the secretary had told the plaintiff in the presence of Charles Monell, in June preceding,—that he should not pay the loss; that plaintiff had burnt the house himself, and that a hearing before the board would not amount to anything. Surely the plaintiff was not justified in delaying suit by anything that occurred after this, or by these letters. It is possible some witness was in the way during the year that elapsed. We are satisfied the company had a clear right to insist upon a strict compliance with this condition. No negotiations of any kind existed between them and the plaintiff, calculated to lull him into a false security, but rather to stimulate him, if his own skirts were clear, to immediate action.

Where an insurance company shall, by fraud or by holding out reasonable hopes of an adjustment, deter a party assured, being under such a condition to sue, from commencing his suit, he honestly confiding in the pretences and promises of the assurer, the condition would be no bar, but in such case there should be proper averments in the declaration, of the facts.

Giving, as the court did, the fourth and fifth instructions, we are well satisfied was error. Even if the fifth might have been given, declaring affirmatively in the fourth, that the action was barred, would deter the jury from scrutinizing, very carefully, the terms of the fifth, and from laboring to recall the evidence on which it was supposed to be based. Neither should have been given. The judgment must be reversed, and the cause remanded.

*Judgment reversed.*